E. P. SWEARINGEN, PLAINTIFF IN ERROR, v. CHARLES. ROBERTS, DEFENDANT IN ERROR.

Judicial Sale : REDEMPTION. Where real estate has been sold under a decree of foreclosure, to any person not a party plaintiff to the action, the owner of the equity of redemption may redeem the same at any time before the confirmation of the sale by pay-

ing to the purchaser the purchase money, together with twelve per cent. interest thereon, from the date of sale to the date of redemption.

ERROR to the district court for Polk county. Tried below, before POST, J.

*J. R. Webster* and *H. H. Grimes,* for plaintiff in error.

*Higgins & Crites,* for defendant in error.

MAXWELL, J.

The question to be determined in this case is, whether or not the owner of real estate, which has been sold to one not the plaintiff in the action under a decree of foreclosure, must, in order to redeem the same, pay or tender the entire amount of the decree, with interest and costs, with 12 per cent. additional interest on the purchase money, or only the amount paid by the purchaser, with 12 per cent. interest thereon. The question depends upon the construction to be given to section 497a of the code, (Comp. St., 595,) which is as follows: "The owners of any real estate against which a decree of foreclosure has been rendered in any court of record, or any real estate levied upon to satisfy a judgment or decree of any kind, may redeem the same from the lien of such decree or levy at any time before the sale of the same shall be confirmed by a court of competent jurisdiction, by paying into court the amount of such decree or judgment, together with all interest and costs; and in case the said real estate has been sold to any person, not a party plaintiff to the suit, the person so redeeming shall pay to such purchaser 12 per cent. interest on the amount of the purchase price from the date of sale to the date of redemption, or deposit the same with the clerk of the court where the decree or judgment was rendered."

The word "redeem" is defined by Webster "to purchase back; to regain possession by payment of a stipulated price; to re-purchase." According to the strict rules of the common law, unless the mortgagor or his heirs, by payment of the mortgage money and interest, at the time and place appointed, strictly complied with the conditions upon the fulfilment of which it was stipulated that he should re-enter on his estate, it became the property of the mortgagee, even though it greatly exceeded in value the amount of the loan. Littleton says: "If a feoffment be made upon such condition, that, if the feoffor pay to the feoffee at a certain day * * * £40 of money, then the feoffor may re-enter. If he doth not pay, then the land, which is but in pledge upon condition for the payment of the money, is taken away from him forever and so dead to him, upon condition." Section 310.

Courts of equity, however, from an early period, have held that until foreclosure the mortgagor, if he applied within reasonable time, and offered to pay the amount due, and costs, might redeem the forfeited estate. This right to redeem, as it could be enforced only in a court of equity, was called the equity of redemption. In *Howard v. Harris*, 1 Vern., 190, decided in 1683, it was held that no agreement in a mortgage could make it irredeemable; and the right of redemption attaches to every mortgage. Under the English chancery practice, proceedings to foreclose a mortgage were not for a decree directing a sale of the mortgaged premises to satisfy the amount found due, but directing the defendant to pay the amount due on the mortgage by a day to be named, on the failure of which his right to redeem would be barred. But until the time fixed in the decree had elapsed, the owner of the equity of redemption could pay the amount due on the mortgage and redeem. Our statute provides for a sale of the mortgaged premises, the proceeds of the sale to be applied to the satisfaction of the decree. The right

of redemption continues up to the time of the confirma-
tion of the sale.

Our statute seems to provide for two classes of purcha-
sers : *First,* if the premises are purchased by the plain-
tiff in the action, the owner of the equity of redemption
may redeem by paying into court the amount of the
decree, together with all interest and costs; *second,* when
any person not the plaintiff is the purchaser, the party
redeeming must pay the purchaser the amount of the
purchase money, together with 12 per cent. interest there-
on from the date of the sale to the time of redemption,
or pay the same into court.  This transaction is entirely
between the owner of the equity of redemption and the
purchaser.  If the owner redeems, the purchaser receives
12 per cent. interest for the use of his money, the owner
of the equity retains the real estate, and the creditor
receives the amount of money for which the premises
were sold.

It is very strenuously insisted that in any case a party
redeeming must pay the amount of the decree, interest,
and costs ; and if the premises are sold to any person not
the plaintiff in the action he must, in addition, pay the
purchaser 12 per cent. interest on the purchase money.
There is no doubt the language used in the section above
quoted, if taken by itself, will admit of that construction.
But is that the necessary or proper construction?  We
think not.  In construing remedial statutes there are
three points to be considered : the old law, the mischief,
and the remedy.  And it is the duty of courts so to con-
strue the act as to suppress the mischief and advance the
remedy.  1 Bl. Comm.,87.

At the time the act under consideration was passed, the
owner of the equity of redemption had no right to redeem
after the sale.  The design of the law, therefore, evident-
ly was to extend the right of redemption to the time of
confirmation.  Prior to its passage the owner of the

equity of redemption, at any time before the sale, could redeem by paying the amount of the decree, interest, and costs. The statute continues that right in force upon the same conditions, if the plaintiff is the purchaser, up to the date of confirmation. There would seem to be reason in this. The plaintiff has a claim for a definite sum, which is a lien upon the real estate, but is usually less than its value. The estate, therefore, in most instances may be presumed to be of as much or greater value than the amount of the debt; therefore, if the owner of the equity of redemption wishes to redeem he must do so from the decree. But how can this principle apply to the case of a purchaser other than the plaintiff in the action? All that the plaintiff can obtain in such case is the amount of the purchase money; and upon its payment, if the sale is confirmed, his lien is absolutely divested, and he has no further claim against the estate.

The creditor does not seem to have any interest in the matter, as it can make no difference to him whether the purchase money is derived from the purchaser or the debtor. The object of the statute is to grant relief to the debtor, and the legislature certainly did not intend to place hindrances in the way of redemption by imposing upon the debtor the payment of 12 per cent. to the purchaser in addition to the interest on the decree. It is an established rule, in the interpretation of a statute, that the intention of the law-givers is to be deduced from the whole statute taken and compared together. " The real intention, when accurately ascertained, will always prevail over the literal sense of terms. When the expression of a statute is special or particular, but the reason is general, the expression should be deemed general, * * * and the reason and intention of the law-givers will govern the strict letter of the law, when the latter would lead to palpable injustice, contradiction, and absurdity." 1 Kent Com. 462.

The above is peculiarly applicable to this case; the evident intention of the statute being to allow the party redeeming from one not the plaintiff in the action, to do so by paying the purchase money and 12 per cent. interest. The question whether the rate of interest to which the purchaser is entitled is affected by the usury laws of 1879, is not involved in this case, and will not be considered.

The judgment is therefore reversed, and the cause remanded for further proceedings,

REVERSED AND REMANDED.

LAKE, CH. J., dissenting.

By the stipulation of counsel but a single question is presented for our consideration, viz., whether the plaintiff in error could redeem his land from the sale made pursuant to the decree of the district court by paying the purchase price, together with interest thereon at the rate of 12 per cent. per annum and costs? On the part of the defendant in error it is claimed that he could only redeem by paying the whole amount of the decree, without reference to the price for which the land was sold, and in addition to this 12 per cent. interest to the purchaser on the amount of his bid.

At first I was strongly inclined to adopt the view of the plaintiff in error, but further reflection leads me to the conclusion that it is not the proper one to take. The right of redemption is claimed under the following provision of the statute: "That the owners of any real estate against which any decree of foreclosure has been rendered in any court of record, or any real estate levied upon to satisfy any judgment or decree of any kind, may redeem the same from the lien of such decree or levy, at any time before the sale of the same shall be confirmed by a court of competent jurisdiction, by paying into court the amount of such decree or judgment, together with all in-

terest and costs; and in case the said real estate has
been sold to any person not a party plaintiff to the suit,
the person so redeeming the same shall pay to the said
purchaser 12 per cent. interest on the amount of the pur-
chase price from the time of the sale to the date of re-
demption, or deposit the same with the clerk of the court
where the decree or judgment was rendered." Laws 1875,
p. 57; Comp St. 595, § 497.

. On a careful examination of this provision I think it
will be conceded that it is somewhat peculiar, differing
essentially from those ordinarily made for the redemp-
tion of lands from sales merely under decrees or execu-
tions.    The privilege which it gives to the debtor is not
to redeem his land from the sale alone, but from the
"decree or levy."    This, of course, can only be done in
the mode directed, which is "by paying into court the
amount of such decree or judgment, together with all
interest and costs;" and, if sale has been made to a
person other than the plaintiff or judgment creditor,
there must also be paid to the purchaser "12 per cent.
interest on the amount of the purchase price from the
date of the sale to the date of the redemption," or depos-
ited for him "with the clerk of the court" in which the
decree or judgment was rendered.    The first clause of
this provision is plain enough.    No doubt seems to be
entertained as to its meaning.    It confers no right what-
ever, except upon the precedent condition of payment of
the whole amount for which the debtor is liable under the
judgment or decree, including interest and costs.    This
much is given to the judgment creditor in all cases of
redemption under this law.

The precise meaning of the last clause may be some-
what obscure, but I think a little reflection will make it
apparent that it is merely an additional requirement to the
right to redeem in those cases wherein a stranger to the
record becomes the successful bidder.    It is evidently

based upon the hypothesis that sheriffs do their duty in making such sales, in this, that they exact prompt payment of the amount of the accepted bid. If this be done, and the purchase is avoided by redemption, it is but just, and so the legislature probably thought, to remunerate the bidder for his trouble, and the loss of the use of his money while idle in the sheriff's hands, by giving him interest as here provided. On the setting aside of the sale the amount of his bid would, of course, be returned to him by the officer holding it.

The construction sought by the plaintiff in error, that he was entitled to redeem from the sale merely by paying "the purchase price and interest from the date of sale to the date of redemption," is not justified by any words found in the provision. It nowhere says that he shall pay the "purchase price" to the purchaser, or deposit the same with the clerk of the court for his use. "The purchase price," before confirmation, is in the hands of the officer making the sale, or should be, and its final disposition depends wholly upon whether the sale shall be confirmed or set aside. It cannot be paid to the judgment or execution creditor except upon the event of confirmation. But if the sale be vacated, it is as if it had never been, and the money paid to the sheriff by the purchaser is to be returned to him. I am certainly aware of no rule by which, in the event of such sale being set aside, that purchase money thus held could be paid over to the creditor. And the rule must be the same whether the sale be vacated by order of the court reviewing it, or as the result of redemption under the law. If the sale fail from either cause, surely nothing can come of it to benefit the creditor.

Giving to the language of the section its ordinary meaning, which is a rule to be observed in the construction of statutes, is it not clear that the privilege which it gives is fully expressed by the first clause? That privilege, as

before shown, is to redeem the land from "the decree or levy," which can be done only "by paying into court the amount" due upon the "decree or judgment, together with all interest and costs." The second clause confers no right whatever upon the debtor, but simply imposes upon him an additional duty; it requires that "the person so redeeming" shall pay, etc. The term "so redeeming" is one of reference, and relates back unquestionably to that part of the preceding clause which points out the mode by which a redemption may be effected, viz., "by paying into court the amount of such decree or judgment," etc.

After bestowing much reflection upon the statute I see no reason to doubt the entire soundness of the construction given by the district judge, and am of opinion that it should be affirmed.